The CITY OF BUFFALO, Appellant
(Defendant below),

v.

Dean JOSLYN, Appellee (Plaintiff below).

No. 4387.

Supreme Court of Wyoming.

Nov. 7, 1974.

Burgess & Davis and Charles R. Hart, Sheridan, for appellant.

Robert W. Connor, Jr., Connor & Connor, Sheridan, for appellee.

Before PARKER, C. J., and McEWAN and McCLINTOCK, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Dean Joslyn brought an action against the City of Buffalo alleging that in a regular meeting of the city council, at which there was discussion by the mayor and members of the council concerning the advisability of the transaction, the city contracted to trade a 14.25 acre tract of land belonging to it and located outside the city limits for plaintiff's approximately one-third acre and thereafter refused to perform the contract. He sought specific performance and in the alternative (only) asked for $40,000 damages. The court denied specific performance but found generally for the plaintiff and against the defendant, awarding plaintiff damages in the sum of $12,000 plus costs. From the judgment defendant appeals, charging error on several different grounds, only one of which requires consideration here: The purported contract was void because no authority exists to exchange municipal property, and assuming arguendo that it is authorized, the exchange could be made only in accordance with § 15.1–12, W.S.1957, C. 1965,[1] requiring advertisement, with which there was no compliance.

The parties stipulated that:

" * * * The exchange of land owned by the parties to this action was entered into as a result of the consultations had

---

1. "Before the sale of any real or personal property of any city or town of the value of five hundred dollars ($500) or more an advertisement of the intended sale, describing the property and the terms of the sale, shall be published at least once each week for four consecutive weeks in a newspaper having general circulation in the community, calling for sealed bids for purchase of the property. Upon the opening of the bids, the property shall be sold to the highest responsible bidder, unless the governing body of the city or town shall reject all bids. * * * "

between the parties at a regular meeting of the city counsel [sic] on April 3, 1973, subject to the condition that the parties would exchange title insurance with each other, that the plaintiff would have the privilege of removing the structure from the premises he intended to exchange with the defendant, that closing would be ninety days from and after the date of April 3, 1973, and subject to the further condition defendant intends to adduce at the time of trial."

The city clerk's minutes of the April 3 meeting read:

"Dean Joslyn proposed to trade the City Lot #3 Block #1 Railroad Addition for a parcel of land owned by the City. It is located about three miles West of Buffalo on the North side of Highway #16 and contains 13.4 acreas [sic] of land. A motion was made by Councilman Adami and seconded by Councilman McIntyre to make the trade with the City reserving the mineral rights. Upon a roll call vote, all votes were 'Ayes.'"

In considering the contended lack of authority to exchange municipal property and the noncompliance with § 15.1–12, we note the universal rule that municipalities can exercise only those powers of government which are expressly or impliedly conferred. May v. City of Laramie, 58 Wyo. 240, 131 P.2d 300, 312. No statute is called to our attention, and we are aware of none, expressly authorizing exchange of property by cities; but plaintiff argues that the power to exchange municipal lands is generally held to arise by implication from the express powers of selling and buying real estate and that where such a right arises by implication the procedure to be followed is left to the discretion of the governing body, to be exercised in an appropriate and proper manner, citing City of Tucson v. Arizona Alpha of Sigma Alpha Epsilon, 67 Ariz. 330, 195 P.2d 562, where an exchange of real property by a city in conformity with its charter provisions was held not to be invalid because the city did not advertise for bids as required by a statute relating generally to cities and towns. The court there held that the statute in question had no application to charter cities, which circumstance renders the case of no assistance in the controversy before us. Other cited encyclopedic and text statements[2] indicate disparate holdings in cases involving analogous situations. Our view of the instant situation is that were we to accept the thesis that the power to buy and sell includes the right to exchange, we would still have to decline acceptance of plaintiff's assertion that the procedures outlined in § 15.-1–12 would not apply to the exchange of lands and that the city might make any orders in respect to such an exchange as deemed to be in its best interest. Even were the city officials so well informed on the matter of a sale or exchange that no possible additional information could come to their attention by the advertisement of the intended disposition of city property, it is important to the officials of a city and the residents thereof that any appearance of unfairness be guarded against by complying with the provisions of § 15.1–12. Since admittedly this was not done here, the cause must be reversed.

Reversed.

2. 56 Am.Jur.2d, Municipal Corporations § 551; 10 McQuillin, Municipal Corporations, p. 90 (1966 rev.).